1
2
3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LATASHA N. B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

Case No. 22-CV-5016-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

## I.     ISSUES FOR REVIEW

A.  Whether the New Regulations for Evaluating Medical Opinion Evidence are Partially Invalid

B.  Whether the ALJ Erred in Evaluating Medical Opinion Evidence

C.  Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

D.  Whether Plaintiff's Residual Functional Capacity ("RFC") is Supported by Substantial Evidence

## II.    BACKGROUND

In July and November 2019, plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"), respectively, alleging a disability onset date of June 29, 2019 in both applications. Administrative Record ("AR") 63, 109, 123, 136.

Plaintiff's applications were denied initially and on reconsideration. AR 117,134, 147. Administrative Law Judge ("ALJ") John H. Goree held a hearing on December 4, 2020, and issued a decision on January 7, 2021 that claimant was not disabled. AR 57–79, 80–106.

Plaintiff seeks judicial review of the January 7, 2021 decision. Dkt. 13.

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV.    DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments: fibromyalgia, asthma, hypertension, obesity, residuals status post-hysterectomy and cholecystectomy, depression, and post-traumatic stress disorder ("PTSD"). AR 63. Based on the limitations stemming from these impairments, the ALJ

found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work with postural, exertional, and environmental limitations. AR 66.

Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform her past relevant work, but could perform sedentary jobs at step five of the sequential evaluation; therefore, the ALJ determined at step five that plaintiff was not disabled. AR 71–73.

A. Whether the New Regulations Are Partially Invalid

Plaintiff contends the revised regulations set out by the Commissioner in evaluating medical opinion evidence are "partially invalid" because they have deemed the medical source's relationship with a claimant "irrelevant" and "relieves an ALJ of the duty to address" the medical source's relationship with the claimant in the ALJ's analysis. Dkt. 13, p. 2–6.

The new regulations listed several factors an ALJ must consider when evaluating medical opinion evidence. Contrary to plaintiff's contention that the treating relationship is not being considered, one of the factors cited in the rule is the medical source's relationship with the claimant. *See* 20 C.F.R. § 404.1520c(c)(3). Though the ALJ is not required to explain how they considered the listed factors, as clarified by the Ninth Circuit, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1520c(c)(3), (c)(3)(i)–(v)). Thus, the new regulations did not render "irrelevant" the nature of the relationship between a treating source and claimant.

The Ninth Circuit also clarified, under § 405(a) of the Social Security Act, the Commissioner has the "latitude 'to make rules and regulations and to establish procedures . . . in particular regulations governing 'the nature and extent of the proofs and evidence . . . to establish the right to benefits." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Thus, the Commissioner has the authority to publish regulations that guide the ALJ's and the Appeals Council when they interpret and apply the criteria for evaluating medical opinions.

B. Whether the ALJ Erred in Evaluating Medical Opinion Evidence

Plaintiff contends the ALJ erred in discounting the medical opinions of Ms. Thomas, LPN, Dr. Tackach, and Dr. Harrison. Dkt. 13, pp. 6–10.

Plaintiff filed her applications in July and November 2019. AR 63, 109, 123, 136. For applications filed after March 27, 2017, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. § 404.1520c(c)(1), (c)(2). Under these regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

1. Medical Opinion of Ms. Daisy Thomas, LPN

In August 2019, Ms. Daisy Thomas, LPN provided a letter addressing plaintiff's impairments. AR 806. The letter stated:

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1

2
> Latasha [B.] is my patient at LRDC and was diagnosed with (FMS)
> Fibromyalgia Syndrome. This syndrome can cause widespread body
> aches, fatigue, nonrestorative sleep, depression, anxiety, mind fog, and
> poor concentration. Ultimately, it may affect her job performance. The
> patient did not tolerate Gabapentin, Lyrica nor Tizanidine. However,
> patient does tolerate Baclofen so far.

3

4

5
*Id*.

6
   The ALJ discounted Ms. Thomas's opinion, finding it "vague," specifically

7
because it did not address any of plaintiff's functional limitations and her use of the word

8
"may" rendered plaintiff's ability to work "inconclusive." *See* AR 70.

9
   As discussed above, supportability and consistency are the two most important

10
factors when considering a medical opinion. 20 C.F.R. § 404.1520c(a). The regulations

11
further provides that a medical opinion's persuasiveness relies on the relevance of the

12
medical evidence by which the medical source support his or her opinion. 20 C.F.R. §

13
404.1520c(c)(1). Here, Ms. Thomas's opinion simply states plaintiff's fibromyalgia

14
diagnosis, lists the symptoms associated with fibromyalgia and its possible effect on

15
plaintiff's job performance, and generally describes plaintiff's response to certain

16
medication. AR 806. Because Ms. Thomas's opinion lacks supportability as required

17
under the new regulations, the Court finds the ALJ reasonably discounted her opinion

18
and did not err in doing so.

19
### 2.  Medical Opinions of Dr. Jim Tackach and Dr. Harrison

20
   On August 31, 2019. Dr. Jim Tackach assessed plaintiff's RFC. AR 115–17. He

21
assigned several exertional, postural, and environmental limitations, and assessed,

22
"expect function at SEDENTARY exertion with compliance." AR 115. On January 14,

23
2020, Dr. William Harrison also assessed plaintiff's RFC. AR 131–33, 144–46. He also

24
assigned several exertional, postural, and environmental limitations, and assessed,

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

1  "Review of old and new MER affirms previous rating of projected Sedentary RFC w

2  limits." AR 146. The ALJ found these opinions persuasive, but plaintiff contends the

3  doctors' opinions lacked supportability and consistency because they did not consider

4  plaintiff's medical records after January 2020, or her testimony. *See* Dkt. 13, p.10; AR

5  70.

6       But in finding their opinions persuasive, the ALJ considered medical records after

7  January 2020. *See* AR 886, 950, 1013, 1017, 1052, 1070-78. Further, the treatment

8  notes show plaintiff reported abdominal pain, constipation, and overall body pain and

9  fatigue – consistent with plaintiff's testimony. Therefore, the ALJ's decision is supported

10  by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)  Accordingly,

11  the Court finds the ALJ did not err in evaluating the medical opinion evidence.

12       C. Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

13       The ALJ's determinations regarding a claimant's statements about limitations

14  "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722

15  (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).   In

16  assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has

17  presented objective medical evidence of an underlying impairment. If such evidence is

18  present and there is no evidence of malingering, the ALJ can only reject plaintiff's

19  testimony regarding the severity of his symptoms for specific, clear and convincing

20  reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v.*

21  *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

22       Plaintiff testified that she is unable to work because of fibromyalgia, tremors, and

23  the effects of her hysterectomy. AR 91-92. She explained that her hysterectomy has

24  "limited certain things" that she is able to do, including being with her children and

25

1   cutting up her food. AR 91. She explained that she experiences daily pain from

2   fibromyalgia and that she feels it "everywhere," describing it was "burning" and "achy."

3   *See* AR 92. As a result, plaintiff states she cannot sit or stand for longer than ten

4   minutes and has to change positions to keep her body moving. AR 93–94.

5          Plaintiff also states she can only walk for five to six minutes before she needs to

6   take a break. AR 94. She testified that when she has tremors, her entire body shakes,

7   and often she experiences tingling and numbness in her hands and feet. AR 97. As a

8   result, plaintiff states she cannot cut food or hold on to things, and it is hard for her to

9   write. AR 97-98. According to plaintiff, the pain she experiences makes it difficult for her

10  to focus or concentrate, at least two to three times per day. AR 97-99.

11         As to her mental health, plaintiff testified to PTSD and anxiety. AR 99. Because

12  of these symptoms, plaintiff states she cannot deal with loud noises, she cannot be

13  around more than five people, and she cannot drive. AR 99–100.

14         1.  Physical Symptom Testimony

15         The ALJ discounted plaintiff's testimony of her physical symptoms because (1) of

16  her conservative treatment, (2) the lack of physical examinations showing "significant

17  exacerbations of fibromyalgia," and (3) plaintiff was able to work with her impairments

18  prior to her alleged onset date. AR 67.

19         With regards to the ALJ's first reason, evidence that medical treatment helped a

20  claimant "'return to a level of function close to the level of function they had before they

21  developed symptoms or signs of their mental disorders' . . . can undermine a claim of

22  disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R.

23  pt. 404, subpt. P, app. 1 (2014)). But here, the ALJ fails to identify which of plaintiff's

24

25

1    treatment notes undermines her testimony, and does not explain how plaintiff's

2    conservative treatment has rendered her able to work. It is not the role of the reviewing

3    court to comb the administrative record and identify specific conflicts. *Burrell v. Colvin*,

4    775 F.3d 1133, 1138 (9th Cir. 2014). The ALJ has failed to direct the Court to the

5    evidence, thus the Court cannot properly determine whether the ALJ properly

6    discounted plaintiff's testimony.

7           Regarding the ALJ's second reason, "[c]ontradiction with the medical record is a

8    sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r,*

9    *Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60

10   F.3d 1428, 1434 (9th Cir.1995)). But here, the records cited by the ALJ do not

11   necessarily contradict plaintiff's testimony.

12          The ALJ first pointed to a treatment note stating plaintiff is able to get in and out

13   of a car and put on her socks and shoes, but this does not explain how plaintiff's

14   movement in and out of a car or putting on socks and shoes would contradict plaintiff's

15   statements about her inability to work. *See* 587. Further, the same treatment notes that

16   are cited by the ALJ also include a statement that plaintiff's complaint regarding her

17   "widespread myofascial type pain" had not changed. *See id*.

18          The ALJ also identified treatment notes from 2019 stating plaintiff experienced

19   some relief from medication -- but later treatment notes show plaintiff "didn't achieve

20   any fair control" or that "no effective treatment" exists as to plaintiff's fibromyalgia. AR

21   812–14 , 863, 865. The ALJ also identified a treatment note stating it was unclear if

22   plaintiff was "putting max effort" in her strength testing, and normal musculoskeletal and

23   range of motion. AR 67. But fibromyalgia is an "unusual" disease for which "there is an

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (internal citations and quotation marks omitted). Here, the record shows, and ALJ acknowledged, that plaintiff repeatedly reported such symptoms. AR 474, 587, 1031, 1052. Given these reports, the Court cannot say the ALJ properly discounted plaintiff's testimony regarding her fibromyalgia.

In discounting plaintiff's testimony regarding the effects of her hysterectomy, the ALJ cited several physical examinations showing "unremarkable" results. AR 68. However, the notes also included plaintiff's continued reports that she experienced abdominal pain and severe constipation. AR 784–85, 886–88, 950–51, 1055. Further, the record indicates plaintiff's supracervical hysterectomy may have contributed to her urologic symptoms, including pelvic pain. AR 1077. Plaintiff was ultimately recommended and admitted for a total hysterectomy to address the symptoms. AR 1071–77. Given these findings, the ALJ erroneously discounted plaintiff's testimony regarding the pain she experiences from her hysterectomy.

Finally, with regards to the ALJ's third reason, an ALJ may discount a claimant's testimony if the evidence shows a claimant was able to work despite experiencing symptoms. *See Sadeeq v. Colvin*, 607 F. App'x 629, 631 (9th Cir. 2015); *Alexander v. Comm'r of Soc. Sec.*, 373 F. App'x 741, 744 (9th Cir. 2010). Yet when a claimant has fibromyalgia, it is important to consider the patients' reports of pain and other symptoms. *Revels*, 874 F.3d at 656. The record shows plaintiff continued to report pain because of her fibromyalgia while she was working. AR 474, 488. Further, some of the

cited treatment notes show that even prior to the alleged onset date state plaintiff was *not* working while experiencing the symptoms, undermining the ALJ's finding. *See* AR 516. The Court, therefore, finds that the ALJ did not reasonably discount plaintiff's testimony as to her physical symptoms.

### 2.  Mental Health Symptoms

The ALJ discounted plaintiff's testimony regarding her mental health symptoms because: (1) the record showed a lack of mental health treatment, and (2) she responded well to medication. AR 68.

With regards to the ALJ's first reason, "an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, the ALJ pointed out that after three appointments with her mental health providers, plaintiff was discharged after they were unable to contact her. AR 555.

Plaintiff points out "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation,'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)), but this is a general statement rather than specific to her situation -- plaintiff provides no citation to the record that would offer facts showing why she could not make it to her sessions.

Further, the ALJ also reasonably discounted plaintiff's testimony because the record shows she responded well to medication. AR 70. In July 2019, plaintiff was

reported to have "responded well to Abilify, as regards depression/anxiety." AR 582.

Additionally, in a September 2020 patient health questionnaire, plaintiff indicated no

trouble with concentration. AR 967. She also reported that her concentration and her

anxiety would not greatly affect her ability to do work, take care of things at home, and

get along with other people. AR 967. Given these findings showing plaintiff improved in

her medication and that she herself reported that her concentration and anxiety would

not have much impact on her working and interacting ability, the ALJ could reasonably

discount plaintiff's mental health testimony.

Harmless Error

An error is harmless only if it is not prejudicial to the claimant or "inconsequential"

to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*,

454 F.3d 1050, 1055 (9th Cir. 2006).

In this case, the ALJ's errors were not harmless because a proper evaluation

plaintiff's testimony regarding her physical symptoms could change the ALJ's

assessment of plaintiff's RFC and may affect the hypotheticals provided to the VE.

D.  Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

The ALJ committed harmful error, necessitating the ALJ's reassessment

plaintiff's testimony, and thus plaintiff's RFC is not supported by substantial evidence.

*See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC

that fails to take into account a claimant's limitations is defective").

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ harmfully erred in the

decision finding plaintiff to be not disabled. Defendant's decision to deny benefits

therefore is REVERSED and this matter is REMANDED for further administrative

proceedings. The ALJ is directed to reassess plaintiff's testimony as to her physical

symptoms.

Dated this 14th day of September, 2022.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12